Thomas C. Chimera, J.
Plaintiff moves for summary judgment in his action to recover the sum of $505.51 for unpaid salary, against defendant City of New York, and for judgment against defendant New York City Employees’ Retirement System declaring that said sum be included in ‘ ‘ earnable compensation ” as a basis for determination of petitioner’s pension payment. Defendants cite subdivision b of section 93c-2.0 of the Administrative Code and Quayle v. City of New York (278 N. Y. 19) for their refusal or unwillingness to pay the sum admittedly earned for the periods when the checks were not protested, and section B3-36.6 of the Administrative Code for not adding the said sum to his pension base.
The facts are not disputed. On February 21, 1969, the Mayor established a managerial pay plan, effective July 1, 1969. This included plaintiff’s position (M-IV, 4th step), and established his annual rate of pay at $23,780.
*867 By Executive Order 71/69 (July 10, 1969) the managerial pay plan schedule was modified, increasing plaintiff’s annual rate of pay to $27,260, effective, as heretofore, July 1, 1969. This had the effect of increasing plaintiff’s salary to $24,733.42 for his final year of service ending October 8, 1969 (the date of his retirement).
The Mayor’s Executive Order 71/69 was first implemented in the payroll check of September 5, 1969, on which date all employees similarly situated, except plaintiff, were given two checks —one for that payroll date reflecting the increase in pay and another for all unpaid differences in arrears. Plaintiff’s single September 5, 1969 check reflected neither increase nor arrears and this and subsequent checks were endorsed' by him “ under protest.” Plaintiff was excluded, the fact that he was then on terminal leave having erroneously been treated by defendants as though he had already been retired from service.
Following a Corporation Counsel’s ruling that it was error to exclude plaintiff from the pay increase, plaintiff was paid $447.91, the difference in pay for the period covered by the September 5, 1969 check and ending on the date of his retirement. Defendants agree that the difference in compensation thus received should be added to his base pay for pension computation purposes but refuse to take into account for any purpose that portion of the increase amounting to $505.51, not paid to plaintiff. Defendants claim ‘1 accord and satisfaction ’ ’ for the period covered by the four biweekly payroll checks issued between July 1, 1969 and September 5, 1969 (July 11, July 25, August 8 and August 22,1969), plaintiff having failed to endorse those checks “ under protest.”
The fact that the city had paid in full all other members of plaintiff’s class despite the fact that none of them had endorsed “ under protest ” any of their paychecks issued for the identical period, is said by defendants to be immaterial. ‘ ‘ These employees received their increases on appropriate payrolls in ordinary course. It is only plaintiff who was obliged to seek recovery against City (sic) first as claimant and now before the court as a litigant. The special legislation requiring filing of claims (Administrative Code, § 394a-1.0, subd. a) and endorsement of payroll checks 1 under protest ’ (Administrative Code, § 93o-2.0) is only applicable to plaintiff, not to his coworkers who have no need to seek a recovery against the City Ct. (sic) Quayle v. City of New York, supra, (278 N. Y. 19).” (See Corporation Counsel’s brief, unnumbered p. 12.)
Quayle (supra) has been cited for many things and properly so. But this is the first time that it has been cited for the proposi *868 tion that the city is free to pick and choose with impunity who shall he excused and who shall be subjected to purportedly inflexible statutory sanctions.
Petitioner had the right, as all others similarly situated had, to assume that the delay in payment of the mandated increases was related to the mechanics and bookkeeping involved in preparing and processing new payrolls and paychecks and, conceivably, in disposing of paychecks customarily prepared in advance of delivery dates. He had no duty to anticipate that the city would invidiously exclude him from his class, and until receipt of the check of September 5, 1969 he had no knowledge of Ms exclusion. He protested that and all subsequent checks.
In Quayle (supra, p. 24), our Court of Appeals had this to say: “ The right of a public official to recover from the city the full salary attached to the office is made subject to the condition that a claim against the city for such salary must be asserted promptly in the manner provided by the Legislature. Though we assume that acceptance of a lesser amount does not upon principles of contract create an accord and satisfaction or result upon common law or equitable principles in a waiver or estoppel, barring the assertion of any additional claim; yet by the statute the Legislature has decreed that regardless of intention of the parties or general principles of contract waiver or estoppel, failure to make timely protest shall bar recovery.”
The “ magic ” word in that opinion is “ timely.”
Quayle had knowledge of his correct pay scale from the start, but protested a year later.
Here, plaintiff protested the very moment he learned that he would not be included in the salary class to which he rightfully belonged. To have protested the payments previous to the one that showed him to be arbitrarily excluded, was requiring him to be clairvoyant as well as “ timely.”
Nevertheless Quayle (supra) is not in point. The court there was not concerned with retroactive pay and the time factor there was vastly more significant than that obtaining here. Nor was the question of discriminatory application of statutory sanctions present there..
Section 93c-2.0 (supra) must be construed, as plaintiff phrases it, in the light of its practical application by city officials in preparing and processing payroll checks and in the light of the city’s practices throughout the years in relation to retroactive payments to employees without their having endorsed their previous checks “ under protest.” Respondents do not deny this practice. Still, subdivision b of section 93c~2.0 of the Administrative Code is not inflexible. This is clear from the *869 decisions in Crowley v. City of New York (299 N. Y. 657), where plaintiff won back pay in a different pay scale for a different position although the city interposed the same Administrative Code defense, and also in Handel v. City of New York (64 Misc 2d 182) where under similar circumstances and the same defense by the city, plaintiff there also prevailed.
On the foregoing reasoning plaintiff is entitled to summary judgment on both causes of action.
One last word. Assuming but not deciding that defendants’ defense of “ accord and satisfaction ” levelled against the first cause of action was ruled legally effective, plaintiff would nevertheless be entitled to judgment on his second cause of action declaring that the sum of $505.51 be included in plaintiff’s “ salary or compensation earnable by him for city-service in the year prior to his retirement ” (see Administrative Code, § B3-36.6, subd. e; italics supplied) as a basis for determination of his pension payment.
We may not ignore the fact that that portion of his salary was in fact earned and only its payment would have been barred. “ Earned ” (an actual accomplishment) is at least equal in significance if not superior to “ earnable ” (a mere potential).