Sidney H. Asch, J.
Motion by plaintiffs for summary .judgment and motions by the Uniform Sanitationmen’s Association and the State Attorney-General for leave to appear and file *311 briefs amicus curiae are consolidated for disposition. TMs is a declaratory judgment action with respect to the application of subdivision 4 of section 431 of the Retirement and Social Security Law.
Motions for leave to appear and file briefs amicus curiae are granted and these briefs have been considered along with the other papers and briefs submitted.
Plaintiff Kleinfeldt worked for the City Transit Authority, and its predecessor, from February 25, 1952 to May 6, 1972, at which time he retired at the age of. 62. Pursuant to section B3-36.6 of the Administrative Code of the City of New York . after 20 years of service an employee can retire and, after he reaches 50 years of age, receive an amount “ equal to one-half of his salary or compensation earnable by him for transit service in the year prior to his retirement ”.
However, subdivision 4 of section 431 of the Retirement and Social Security Law, effective “ on or after April first, nine-' teen hundred seventy-two ” provides that the “ portion of compensation earned during any twelve months included in such salary base period which exceeds that of the preceding twelve months by more than twenty per centum,” shall not be includable in the salary base for retirement purposes. In accordance with this statutory provision and with the opinion of the Corporation Counsel dated August 15, 1972, there was a deduction of $33.50 in the final year salary base of the plaintiff for pension purposes.
Since the above facts are undisputed, the only issue presented is whether subdivision 4 of section 431 by its own terms, or as it has been applied, is violative of section 7 of article V of the State Constitution. It is provided there that after July 1, 1940 “ membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.”
Kleinfeldt’s pension benefits were adversely affected by the provisions of subdivision 4 of section 431 of the Retirement • and Social Security Law in a manner which will continue so long as his pension continues. He contends that the statutory provision conflicts with section 7 of article V of the New York State Constitution and seeks an adjudication that he is entitled to retirement benefits calculated on an unexpurgated salary base.
Before July 1, 1940, the effective date of the constitutional amendment, the law was clear that no member of the city or State retirement systems acquired a vested right to benefits until his right to retirement actually matured. Prior to the date of such member’s retirement, the inchoate pension was *312 deemed gratuitous and could "be modified or revoked by legislative mandate. (Roddy v. Valentine, 268 N. Y. 228 [1935].) To provide the civil servant with a vested right the constitutional amendment was adopted, making the benefits of the retirement system an enforceable contract. (Matter of Day v. Mruk, 307 N. Y.349 [1954].)
The Court of Appeals, thereafter, consistently resisted any attempt to take away the rights guaranteed by section 7 of article Y óf the Constitution of the State of New York (Birnbaum v. New York State Teachers’ Retirement System, 5 N Y 2d 1 [1958]; Matter of Ayman v. Teachers’ Retirement Bd. of City of N. Y., 9 N Y 2d 119 [1961]), especially when the attempt was to be effected retroactively. (Matter of Fisher v. New York State Employees’ Retirement System, 279 App. Div. 315 [3d. Dept., 1952], affd. 304 N. Y. 899 [1953]; Cashman v. Teachers’ Retirement Bd., 193 Misc. 57 [Sup. Ct., N. Y. County, 1948], affd. 275 App. Div. 908 [1st Dept., 1949], affd. 301 N. Y. 501 [1950]; 44 N.Y. Jur., Pensions and Retirement Systems, § 27, p. 310.)
As the court said in Kranker v. Levitt (68 Misc 2d 224, 227 [Sup. Ct., Albany County, 1971]) when it found subdivision 1 of this" section 431 unconstitutional as concerned the exclusion of vacation benefits from the salary base of those who entered the retirement system prior to April 1, 1972: “ This declaratory judgment action poses important and far-reaching questions as to the administration of the New York State Retirement System. It shall have a great financial effect on the employee who is within reach of the golden years of retirement. The employee has relied upon the security offered by membership in the Retirement System which is generally regarded as an inducement to employment in State service. It shall be of great importance to the employees who have entered the service with the knowledge of this benefit.”
In affirming the Krankerr. Levitt (supra) decision, the Court of Appeals in a Per Curiam opinion (30 N Y 2d 574, 575 [1972]), stated that to include certain cash payments in determining the salary base for the computation of retirement benefits constituted a valid contract between the retirement system and its members; and that such payments further, represented compensation for services rendered. “ Accordingly, the plaintiff and all others similarly situated have acquired a vested right to the aforesaid benefit, and that benefit may not now be constitutionally impaired. That being so, it follows that subdivision 1 of section 431 of the Retirement and Social Security Law' *313 * * * violates section 7 of article V of our State Constitution if retroactively applied to the plaintiff and others similarly situated.” (Emphasis added.)
The reasoning in the Kranker v. Levitt case (supra) seems significant in this controversy. The Court of Appeals there affirmed the Supreme Court in insisting that the statutory amendment could not be applied retroactively; and that, to the extent that it was valid, it was so only insofar as the new provisions could affect only those civil service employees hired subsequent to the date of its passage; to apply it retroactively was to impair the contractual right of vested employees to receive their retirement benefits.
This view finds additional support in the law. Subdivision (e) of section 51 of Statutes (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 51, subd. [e]) states: “ The Legislature * * * may not enact retroactive .statutes which will impair constitutional rights ”, and the annotation thereto (pp. 98-99) expands this statement to encompass any “ statute which, by reason of its retroactive operation, impairs the obligation of a contract; deprives a person of due process of law, * * * or interferes with a vested right ”. Further, as clearly set forth in the annotation (p. 100) “ When the validity of a statute can be upheld by giving it a prospective operation although a contrary construction would result in its invalidity, the courts will resolve every doubt in favor of the validity of the statute.”
The growing concentration of industry, the spread of urban life, the increasing substitution of collective for individual bargaining in labor relations, the gradual breakdown of the economic sanctity of contract, and finally, the enormous proliferation of the welfare and regulatory functions of the State, have transformed society. Maine’s celebrated dictum that the progression from feudalism to free enterprise was essentially a movement from contract to status, has gradually been modified by events which have narrowed the freedom of the individual by the restrictions of status. (Freidmann, Law in a Changing Society, Penguin Books [1964], p. 89.) The civil servant has undertaken the often dull or dangerous jobs which must be done, has given up the opportunities for large economic rewards. He has bargained away much of his legal freedom in return for the promise of security.
The call for “ free enterprise ” is always most stringent when there is opposition to higher taxes or new union demands, rather than when domestic manufacturers call upon government to raise protective tariffs. It is not just the civil servant who envelops *314 himself in the security blanket of the government, instead of relying on private initiative. It is the farmer who receives subsidies for not working, the inefficient industrialist who is bailed out by government loans, the exploiter of natural resources whose gains are protected by tax shelters and loopholes.
For labor and management groups alike, wage negotiations are bargained as “package deals” on which prices are set. The parameters of the price package are hammered out together with the point-by-point allocations. Thus, the greater percentage of the package that is spent in an across-the-board increase, the less the other benefits. For the civil service employees, the price of the pension plan, whether specifically discussed or not, is part of the total wage package negotiated when salary raises are determined. Pensions are bargained as an integral part of the wage-and-fringe benefit calculus.
In a spiraling price economy, the security conscious worker is worried about his post-laboring years as a pensioner on a fixed income in an inflation economy. The negotiation-table bargain, therefore, has been for a pension equal, for most Retirement System members, to one half the last year’s pay, which pay in an inflated economy is the highest pay most likely achieved, and the half of which will have to provide for the pensioner’s remaining years in an economy which may increasingly devalue its worth. To say after this wage bargain is made that only a portion thereof will be computed in the salary base for retirement purposes is to destroy the underlying premise of the wage bargain.
This bargain has been enacted into law. In 1967 (L. 1967, ch. 171, § 1; ch. 584, § 1) the Legislature provided for the sanitation men, and in 1968 (L. 1968, ch. 290, § 1) for the transit employees, the right to have pensions computed to produce a retirement allowance equal to one half of the employee’s annual salary for the year prior to retirement. This is the law. The Legislature may try to negotiate a lower salary; but any law which attempts to modify the formula .rather than the input data is an attempt to modify a contractual right guaranteed by the Constitution.
The legal arguments asserted by the defendant and the Attorney-General do not meet the challenge of the socio-economic factors or of the law. The clear purpose of the Legislature in passing section 431 to slow down the costs of pensions given public employees does not overcome its violation of the Constitution. (Kranker v. Levitt, 68 Misc 2d 224, affd. 30 N Y 2d 574, supra; cf. Home Bldg. & Loan Assn. v, Blaisdell, 290 U. S. 398 *315 [1934]; El Paso v. Simmons, 379 U. S. 497 [1965]; Legislative Conference of City Univ. of N. Y. v. Board of Higher Educ. of City of N. Y., 67 Misc 2d 648 [Sup. Ct., N. Y. County, 1971], app. dsmd. 38 A D 2d 524 [1st Dept., 1971].)
Defendant asserts that subdivision 4 of section 431 is not a limitation on retirement benefits but a limitation on salary. But increased salary payments represent compensation for services actually rendered, and are properly includable in the computation of a member’s final average salary. (Kranker v. Levitt, 68 Misc 2d 224, affd. 30 N Y 2d 574, supra; cf. Hoar v. City of Yonkers, 295 N. Y. 274 [1946]; Doyle v. Wright, 201 Misc. 884 [Sup. Ct., Westchester County, 1951]; White v. Hussey, 275 App. Div. 714 [2d Dept., 1949].)
Defendant claims that section 431 constituted a sort of implied waiver, with the consequence that any member of the retirement system who accepted a pay check after its operative date waived his right to have his entire compensation used in computing his retirement benefits. But this argument is not supported by the cases. (Brooks v. City of New York, 68 Misc 2d 866 [Sup. Ct., N. Y. County, 1972]; cf. Matter of Carroll v. Grumet, 281 App. Div. 35 [1st Dept., 1952], mot. for lv. to app. den. 281 App. Div. 863 [1st Dept., 1953], app. dsmd. 305 N. Y. 692 [1953]; Matter of Rosen v. New York City Teachers’ Retirement Bd., 282 App. Div. 216 [1st Dept., 1953], affd. 306 N. Y. 625 [1953]; Doyle v.. Wright, 201 Misc. 884, supra.)
Finally, defendant urges, and the Attorney-General apparently supports the proposition that subdivision 4 of section 431 does not diminish or impair retirement benefits already earned by virtue of past service, but merely limits the benefits to be earned by virtue of service rendered after April 1, 1972, the effective date of the statute. In face of the decided cases, this is an untenable position. (E.g. Matter of Ayman v. Teachers’ Retirement Bd. of City of N. Y., 9 N Y 2d 119, supra; Birnbaum v. New York State Teachers’ Retirement System, 5 N Y 2d 1, supra; Matter of Fisher v. New York State Employees’ Retirement System, 279 App. Div. 315, 318, affd. 304 N. Y. 899; Cashman v. Teachers’ Retirement Bd., 193 Misc. 57, affd. 275 App. Div. 908, affd. 301 N. Y. 501, supra; Kranker v. Levitt, 68 Misc 2d 224, affd. 30 N Y 2d 574, supra; Matter of Leed v. Levitt, 71 Misc 2d 1091 [Sup. Ct., Albany County, 1972].)
The purpose of the pension provisions is to provide an incentive for faithful service by assuring civil service employees of an adequate living income after their ability to work for the government has diminished by reason of age and disability.
*316 Before the famous trilogy of cases in 1937 (West Coast Hotel Co. v. Parrish, 300 U. S. 379 [1937], upholding a minimum wage statute; Labor Bd. v. Jones & Laughlin, 301 U. S. 1 [1937], upholding the National Labor Relations Act; and Steward Machine Co. v. Davis, 301 U. S. 548 [1937] upholding the Social Security Act), the protection of property rights primarily benefited a very limited class of owners of land or commercial and industrial interests, often curtailing the minimum essentials of the rest of the community. However, the common-law conception of property was never restricted to the bare protection of “ things ” but extended to a broader range of legitimate economic interests and expectations. For the vast majority of those who work for government, a most essential economic interest is the right to use one’s labor and skill and to be protected when one can no longer productively employ them. The civil servant’s earned pension is no less entitled to be protected as a property right than the stocks and bonds which constitute the capital of inherited wealth. ‘1 The notion that private property is an essential condition of human freedom is still accepted. We are perhaps giving the idea a greater practical effect than did our predecessors.” (Harding, Free Man Versus His Government [1958], p. 106.)
There can only be one determination as to the validity of subdivision 4 of section 431 of the Retirement and Social Security Law: it would be unconstitutional to apply the same to any civil service employee who became a member of the retirement system prior to the effective date, April 1, 1972, of this enactment, although its prospective application is within the bounds of legislative enactment.
Accordingly, summary judgment is granted to the extent of declaring that as to the plaintiff and those similarly situated, subdivision 4 of section 431 cannot constitutionally be applied.