Edward J.. Greenfield, J.
Both, sides move for summary judgment in this action seeking a declaration of the rights of plaintiff Schacht and others in similar status with regard to certain leave benefits to which they claim to be entitled upon their retirement from "New York City service.
Plaintiff Schacht presently holds the position of Assistant Director, Child Welfare, in the Department of Social Services (hereinafter, department) and expects to retire shortly. She became a member of the New York City Employees’ Retirement System in 1938 and from July 1, 1956 through December 31, 1970 was governed by certain time and leave regulations authorized by the Mayor pursuant to Executive Order No. 339 of the Department of Welfare (now, H. B. A. info #71-40) promulgated under the “ Career and Salary Plan ” for city employees. She states that the regulations in question permitted all Career and Salary Plan personnel who were employed by the department prior to July 1,1956 and who applied for retirement thereafter upon ceasing work nevertheless to be considered as remaining in active service thereafter for a period equal to the total number of accrued and unused annual leave days, sick leave days (not exceeding the balance accrued as of June 30, 1956 and not exceeding 180 days) and terminal leave days (computed at the rate of seven calendar days for each five years of service or, in the absence of a sick leave credit, at the rate of one month for each 10 years of service). Although she avers that the practice described was “ automatic ”, it appears from defendants ’ answer herein that each application for such leave allowance was subject to the approval of both the head of personnel of the department and the board of trustees of the retirement system.
In any event, on July 1, 1971, effective as of January 1, 1971, plaintiff Schacht’s title was transferred to the so-called “ Mana *459 gerial Pay Plan” which had been established by Personnel Order No. 16/69, dated February 27, 1969, implementing the Mayor’s Executive Order No. 60 of January 24, 1968. On October 13, 1970, time and leave regulations for this plan were established by Personnel Order No. 76/70 which, plaintiffs contend, have the effect of substantially reducing the pre-retirement leave benefits formerly available to them. Thus, it is alleged, if Executive Order No. 339 {supra) were still in effect, plaintiff Schacht would be entitled to cease work at any time after approval of her retirement application and remain on the payroll thereafter drawing her regular salary for a total period of approximately 249 days. .She further claims that she would be entitled to • service credit for such leave time, the effect of which would be to give her an additional year of “ allowable service ” within the purview of section B3-36.6 (subd. g, par. [4], cl. [a]) of the Administrative Code of the City of New York and, thus, by virtue of the formula therein prescribed, increase her final pension allowance beyond what she would otherwise receive by an amount equal to 1.7 % of the average salary earned by her in the year prior to her effective retirement date. In addition, if a salary increase were granted to employees in her title during such leave period, she avers that she would likewise be entitled to have the amount thereof included in the computation of such pension allowance. Although defendants’ answer denies that service credit can be earned during the afore-mentioned leave period and also denies that a salary increase granted within such time would be a factor includable in computing plaintiff’s pension, they have pointed to no authority to support such position and the rules in such regard appear to be in accord with plaintiff Schacht’s claims (see Brooks v. City of New York, 68 Misc 2d 866). It also appears to be true, as said plaintiff claims, that the leave regulations of the managerial plan, if applied to her, will effectively eliminate all possibility of her realizing any of the afore-mentioned increases in her pension allowance.
The first defense raised herein, viz, that the action is time-barred, cannot be sustained. The complaint does not challenge the legality or propriety of defendants ’ actions in either adopting the managerial pay plan or making it applicable to plaintiffs’ titles. The gravamen of their case is that defendants’ contemplated application of the leave regulations of such plan to them when they apply for retirement will violate their right under section 7 of article V of the State Constitution to receive, undiminished and unimpaired, pension and retirement benefits *460 to which they are contractually entitled. A declaratory action is manifestly an appropriate remedy for the determination of such a claim (see Kranker v. Levitt, 68 Misc 2d 224, affd. 30 N Y 2d 574) and the relief sought is unaffected by the four-month time limitation contained in 'CPLR 217 (Matter of Ayman v. Teachers’ Retirement Bd., 19 Misc 2d 355, affd. 10 A D 2d 835, mod. 9 N Y 2d 119). Nor, in this court’s view, is there any merit to defendants ’ further objection that the action may not be maintained as a class action (see Kranker v. Levitt, supra; Kleinfeldt v. New York City Employees’ Retirement System, 73 Misc 2d 310, affd. 43 A D 2d 914).
The merits of this case however, are not so easily resolved. Relying on authorities such as Kranker v. Levitt (supra); Kleinfeldt v. New York City Employees’ Retirement System (supra); Matter of Ayman v. Teachers’ Retirement Bd. (supra); Birnbaum v. New York State Teachers’ Retirement System (5 N Y 2d 1.); Cashman v. Teachers’ Retirement Bd. (193 Misc. 57, affd. 275 App. Div. 908, affd. 301 N. Y. 501) and the recent Court of Appeals decision in Donner v. New York City Employees’ Retirement System (33 N Y 2d 413) plaintiff Schacht has mounted a forceful and persuasive argument in support of her position that her pre-retirement leave rights under former Executive Order No. 339 have a substantial impact upon her ultimate pension allowance and that they therefore constitute retirement 11 benefits ’ ’ of which she has been deprived in violation of her constitutional rights. Her arguments overlook, however, several significant and, in this court’s view, controlling considerations.
First of all, in all of the cases upon which these plaintiffs rely, the statutes or administrative practices found to be inimical to the constitutional prohibition were purposefully designed to directly affect the operation of the retirement systems in question and the benefits payable thereunder. There is authority, however, that where the authorized changes primarily affect, and are directed at, terms of employment (or, a fortiori, as here, time and leave regulations), and have only incidental effects on contractual retirement benefits, no infringement of the constitutional protection will be found. Thus, in Humbeutel v. City of New York (125 N. Y. S. 2d 198, affd. 283 App. Div. 1011, affd. 308 N. Y. 904) the plaintiff policemen had all completed the minimum period of service required for retirement and were thereafter forced to retire at age 63 by reason of a 1951 amendment to the Administrative Code making their retirement at •such age mandatory under such circumstances. Since, under *461 the then existing police pension scheme, as now, service years in excess of the required minimum were a factor in computing the final pension, it is obvious that the amendment in question had substantially the same effect upon these policemen as the administrative action here challenged will have upon the plaintiffs at bar, viz., that of depriving them of the opportunity to have additional service credit applied towards increasing their pensions. Nevertheless, the judgment of this court declaring the challenged enactment valid was upheld by the Court of Appeals (see, also, Geary v. Phillips, 53 Misc 2d 337; Hoar v. City of Yonkers, 295 N. Y. 274). Similarly, in the recent case of Matter of Steinberg v. Lewisohn (N. Y. L. J., March 6, 1973, p. 18, col. 5, affd. 43 A D 2d 1019) petitioner’s title had been transferred from the Career and Salary Plan to the Managerial Plan and, upon ápplying for retirement, he sought, inter alia, to have the terminal leave pay benefits of the former plan applied to him. In denying such relief, this court (per Amsterdam, J.) flatly stated:The rights granted employees under personnel orders are not contract rights or pension rights which vest in the employee and cannot be arbitrarily taken away.”
Finally, and most significantly, it must be concluded that the rights asserted by plaintiffs herein, if, indeed, they existed at all, have been effectively waived.
It is well recognized that public employees may bargain with their employer regarding pension rights, at least to the extent that they may agree that certain extra or additional compensation, the payment of which is not otherwise required by law, will not be included in computing the final average salaries on which their retirement allowances must be based (Matter of Carroll v. Grumet, 281 App. Div. 35; White v. Hussey, 275 App. Div. 714). Similarly, they may also waive any right they have, including statutory or even constitutional pension rights, so long as such waiver does not contravene public policy (Rosen v. New York City Teachers’ Retirement Bd., 282 App. Div. 216, affd. 306 N. Y. 625).
It appears that sometime in 1969 plaintiffs’ then duly authorized collective bargaining agent, the Senior Social Service Administrators Association (hereinafter, association) entered into an agreement with the city and the department which, in addition to incorporating the afore-mentioned pre-retirement benefits of the Career and Salary Plan, also provided as follows: “ The union further agrees that it will not object or intervene in any way and, further, will join with the City in any petition *462 requesting the Board of Certification of the Office of Collective Bargaining to declare the titles covered by this agreement as managerial in nature and not subject to further collective bargaining, effective as of the termination of this contract.”
Such contract was the last covering plaintiffs’ titles and expired on December 31, 1970. Thereafter, as hereinbefore mentioned, their titles were transferred to the Managerial Plan effective January 1,1971.
It further appears-that sometime after the time and leave regulations of the Managerial Plan had been promulgated and established, and before the aforesaid contract expired, the association appeared at hearings before the Office of Collective Bargaining in a proceeding brought by Local 371, District Council 37, .APiSCME, challenging its right to represent employees in plaintiffs’ titles. At these hearings it took an active position, consistent with the above-quoted provisions of its agreement with the city and the department, in support of the latter’s contention that the titles were managerial and should be included in the Managerial Pay Plan.
Plaintiffs are of course bound by these actions taken by their duly authorized representative and must therefore be deemed to have voluntarily relinquished whatever rights they may have had to the leave benefits provided by the Career and Salary Plan in return for the higher salaries and other alternative fringe benefits available to them under the Managerial Plan.
Accordingly, plaintiffs’ cross motion for summary judgment is denied and defendants are granted summary judgment declaring that plaintiff Schacht and others similarly situated have no right to elect to receive the benefits claimed herein under the Career and Salary Plan upon their retirement.