ROBERT R. CARUSO ET AL., APPELLANTS, V. CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLEE.
383 N.W.2d 41

Filed March 14, 1986.   No. 85-151.

Raymond J. Hasiak, for appellants.

Herbert M. Fitle, Omaha City Attorney, Kent N. Whinnery,
Timothy K. Kelso, and Earl G. Greene III, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellants, Robert R. Caruso, Raymond J. Hasiak,
Harold Hug, and John Meehan, who are personnel employed
by the City of Omaha, filed this action in the district court for
Douglas County, Nebraska, seeking an order directing the City
of Omaha either to relieve police officers and firefighters from
having to continue to make contribution to the City of Omaha's
police and firemen's retirement system once they have been
employed for more than 25 years or, in the alternative, to
increase their pension benefits at the rate of 2 percent for each
year beyond 25 years of service.

The specific question raised by this appeal is whether a
section of the Omaha home rule charter and provisions of the
Omaha Municipal Code, creating a retirement system which
requires that before Omaha police officers or firefighters may
receive full retirement benefits they must have been employed
for at least 20 years and must also have attained the age of 55,
constitute a violation of the employees' federal constitutional

rights. The district court found that the requirements were valid and binding and dismissed the appellants' petition. We affirm.

The record discloses that prior to 1961 the pension system for police officers and firefighters employed by the City of Omaha provided benefits of a flat $150 per month for each month a police officer or firefighter lived following retirement. Neither police nor fire personnel had any vested rights prior to retirement, and all contributions made by members were deposited in a general fund. If a member quit, retired, or died before reaching the age of retirement, he or she lost all rights in the pension. In addition, the contributions to the fund were a condition of employment.

Effective May 27, 1957, the electorate of the City of Omaha approved and adopted a new home rule charter. Section 6.09 of that charter set a minimum retirement age of 55 for police officers and firefighters. This provision, evidently for the first time, made provision for vesting of an employee's pension. Section 6.09 of the 1956 charter, effective May 27, 1957, has not since that date been amended in any way relevant to this matter. On July 1, 1961, the remainder of the retirement system was put in place by the adoption of various municipal ordinances. Section 22-61 of the Omaha Municipal Code provided for pension rights substantially better than police officers and firefighters had ever received before. Section 22-86 of the code gave these employees the right, if they quit or were terminated for cause, to receive all of the moneys they had contributed into the pension fund, plus interest. This was substantially better than had been the case before 1961, when the employees were not entitled to receive any of their contributions if they quit or were terminated. Additionally, provisions were made for work-related disability pensions and non-work-related disability pensions. Again, this was an increased benefit over that which had existed prior to 1961.

The sections of the Omaha Municipal Code specifically challenged by this suit are §§ 22-73, 22-75, and 22-76. Section 22-73 presently provides that each employee of the police or fire department must contribute to the city retirement pension an amount equal to 7.25 percent of the employee's salary. The city makes an additional contribution equal to 8.55 percent of the

employee's salary. Section 22-75 provides that if an employee has served 20 or 25 years *and* is over 55 years of age, he or she shall be entitled to a service retirement pension. And, finally, § 22-76 provides that an employee over the age of 55 years who has been employed for 20 years is entitled, upon retirement, to a pension equal to 40 percent of his or her highest average monthly compensation during any consecutive 12 months during the member's last 5 years of service and 50 percent if employed for 25 years.

The appellants in this case are affected employees who have accumulated more than 20 years of service but at that time had not yet attained the age of 55 years. According to § 22-73, although they are already entitled to a 40-percent pension when they reach the age of 55, if they choose to continue working, they are still required to contribute 7.25 percent of their salary into the pension fund. Furthermore, if they accumulate 25 years of service before reaching 55 years of age, they are required to continue making contributions to the pension fund even though the amount of their pension cannot exceed 50 percent of their highest average monthly compensation received during any consecutive 12-month period during the last 5 years of service. Due to these facts, appellants maintain that they have been denied certain rights under the federal Constitution. Specifically, they maintain that the requirement that they must continue to make contributions to the pension plan even though they may not retire until they reach age 55, and cannot, in any event, receive more than 50 percent of their highest average monthly compensation paid during any consecutive 12-month period during the last 5 years of service, impairs the obligation of contract, in violation of U.S. Const. art. I, § 10, as well as deprives appellants of property without due process of law, in violation of U.S. Const. amend. XIV, § 1. Further, appellants maintain that the provisions of the Omaha charter and ordinances establishing and creating their pension system deny appellants equal protection of the laws, in violation of U.S. Const. amend. XIV, § 1. As we have indicated, we are simply unable to find any basis for the claim.

Accepting, for the purpose of argument, that the right of a public employee to receive benefits under a public retirement

plan is not a gratuity but, rather, is deferred compensation and is contractual in nature, and, therefore, protected against unconstitutional impairment, see *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982), we still are unable to see how anything done by the City of Omaha impairs the obligation of the contract.

While appellants argue that the actions of the city in some manner "impair the obligation of a contract," they do not cite us to any specific act of the city which causes that "impairment." One of the basic rules of statutory construction is that statutory language will be given its plain and ordinary meaning. See, *CONtact, Inc. v. State*, 212 Neb. 584, 324 N.W.2d 804 (1982); *O'Neill Production Credit Assn. v. Schnoor*, 208 Neb. 105, 302 N.W.2d 376 (1981). The word "impair," as used in the U.S. Constitution, requires no construction and may be given its ordinary meaning, which, according to the most basic dictionary definition, is "to make worse." Webster's Third New International Dictionary, Unabridged 1131 (1981). Obviously, then, not every change constitutes an impairment under the federal Constitution. The change must *take something away* and not work to the parties' benefit. Therefore, in order for appellants to succeed under their contention that the ordinances of the City of Omaha "impair" the obligation of a contract, appellants have the burden of showing how the situation which now exists has been made worse than that which existed when their rights were created. Absent such a showing, there is no proof of any "impairment."

Prior to 1961, Omaha police officers and firefighters were not entitled to any pension unless and until they reached retirement eligibility. All of their contributions were lost if they left their employment prior to retirement. After 1961 they were, for the first time, given the right to withdraw their own contributions, together with interest, if they left prior to retirement. We cannot, therefore, see how the new system could have made their retirement benefits worse and thereby constituted an impairment. Moreover, prior to 1961, they received no benefits unless and until they retired, although they were, as a condition of employment, required to make

contributions to the pension fund. Also, upon retirement, they received only $150 per month, regardless of what their earnings had been. Again, we are unable to see how the language of the Omaha charter or ordinance has made their retirement benefits worse than they would have been prior to 1961. Unlike the *Halpin* case, *supra*, where employees came to work upon the representation that they would receive an increased benefit, and, in fact, were offered a reduced benefit, here no employees came to work under the promise of receiving anything more than they are now receiving, and, in fact, some came with the promise of receiving much less. While *Halpin* stands for the proposition that pensions are not gratuities and are matters of contract, it does not stand for the proposition that a public employee is entitled to the best pension the public employee might desire. Where, as here, there is simply no evidence to indicate that the benefits have in any way been made worse than they were prior to 1961, and, in fact, in some cases have been made better, we are simply unable to grasp appellants' argument that the enactments in question impair the obligation of a contract, in contravention of the U.S. Constitution.

Likewise, we are unable to determine how appellants contend that the ordinances deny them either due process or equal protection. As to due process, appellants have in no manner shown, either to the district court or to this court, how any property which they originally had was taken from them—the first step in a due process analysis. The evidence is clear beyond dispute that the system in place after 1961 is substantially better than what existed prior to 1961. Whatever property rights in their pensions the employees may have acquired by being employed prior to 1961 are in no way taken away. While it may be true that if one employee begins working at an earlier age than a second employee, the first employee may contribute more to the pension fund, it is also true that, since the salary upon which the pension is based continues to increase as long as the employee continues to work, upon leaving employment and retiring the first employee may receive more than the second. The fact that if both employees continue employment until retirement they may receive . the same monthly payment does not constitute the taking of property in

violation of the federal Constitution. To hold so would require us to further recognize that if a pension system was set up in such a way that if one retiree died before another and thereby did not receive as large a pension as someone who lived longer, somehow a property right had been taken. There is no evidence in the record to indicate that the contribution made by any employee exceeds the benefits obtained by an employee or that, from an actuarial point of view, requiring an employee to continue making contributions until retirement is unreasonable. In addition, even before reaching 55 years of age, any employee is free to leave his or her employment after 25 years of service and receive full benefits upon attaining the age of 55 even though such employee has made no further contributions. Furthermore, should an employee leave the job *before* he or she accumulates 20 years of service, he or she is entitled to be refunded the sum total of such contributions, together with the interest accrued thereon. There simply is no evidence to support a claim that any property right is being taken.

Finally, as to the equal protection argument, the evidence discloses that all employees are treated alike, to the extent that employees can be treated alike. As we have already indicated, obviously, if one employee comes to work at an earlier age than another, there is some difference in total compensation. Likewise, if one employee, once retired, dies earlier than another employee, there are some differences in benefits received. Those differences, however, do not constitute any denial of equal protection. Using a rational basis test on this classification, age not being a suspect class, see *Vance v. Bradley*, 440 U.S. 93, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979), it appears obvious that this is not a case where no reasonably conceivable set of facts could establish a rational relationship between the classification and an arguably legitimate end of the government. See *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984). As we have already indicated, the actuarial soundness of the system is one such justification. There is no evidence to indicate that the city has acted unreasonably in making a requirement that employees who remain in the employment of the city continue to make

contribution until retirement.

For these reasons the district court's decision was in all respects correct, and the judgment should be affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.