Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/25/2022 09:09 AM CST

CHRISTOPHER ABBOTT ET AL., APPELLANTS, V.
CITY OF BELLEVUE, NEBRASKA, APPELLEE.

___ N.W.2d ___

Filed December 3, 2021.    No. S-20-700.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm
   a lower court's grant of summary judgment if the pleadings and admit-
   ted evidence show that there is no genuine issue as to any material facts
   or as to the ultimate inferences that may be drawn from those facts and
   that the moving party is entitled to judgment as a matter of law.
2. ____: ____. An appellate court reviews the district court's grant of sum-
   mary judgment de novo, viewing the record in the light most favorable
   to the nonmoving party and drawing all reasonable inferences in that
   party's favor.
3. **Attorney Fees.** Generally, a party may recover attorney fees and
   expenses in a civil action only if provided for by statute or if a recog-
   nized and accepted uniform course of procedure allows the recovery of
   attorney fees.
4. **Civil Rights: Actions.** A civil remedy is provided under 42 U.S.C.
   § 1983 (2012) for deprivations of federally protected rights, statutory or
   constitutional, caused by persons acting under color of state law.
5. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision
   awarding or denying attorney fees will be upheld absent an abuse of
   discretion.
6. **Judgments: Appeal and Error.** An appellate court independently
   reviews questions of law decided by a lower court.
7. **Federal Acts: Attorney Fees.** A plaintiff is a prevailing party under 42
   U.S.C. § 1988 (2012) if the plaintiff obtains actual relief on the merits
   of his or her claim that alters the legal relationship between the parties
   by modifying the defendant's behavior in a way that directly benefits
   the plaintiff.

Appeal from the District Court for Sarpy County: Michael A. Smith, Judge. Affirmed in part as modified, and in part reversed and remanded for further proceedings.

Thomas P. McCarty and Gary L. Young, of Keating, O'Hara, Nedved & Peter, P.C., L.L.O., for appellants.

A. Bree Robbins, Bellevue City Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

After the City of Bellevue, Nebraska (City), increased the amount it regularly deducted from its police officers' paychecks to fund their retirement plan, a group of officers and their union filed suit alleging that this action violated their rights under the U.S. and Nebraska Constitutions. With respect to some officers, the district court found that the City unconstitutionally impaired its contractual obligations. As a remedy, the district court ordered the City to insert certain language into the document governing the retirement plan. Those officers and their union appeal. They contend that the language the district court ordered the City to insert into the retirement plan will actually reduce their retirement benefits. They also argue that the district court erred by finding that they were not "prevailing part[ies]" for purposes of 42 U.S.C. § 1988 (2012) and thus not entitled to attorney fees and costs. We find these arguments have merit. We affirm in part as modified, and in part reverse and remand for further proceedings.

## BACKGROUND

*Earlier Dispute Over Retirement Benefits.*

This is not the first time the City has found itself in litigation with its police officers over retirement benefits. The current dispute arises out of an attempt to resolve prior litigation, and thus, we begin our review of the relevant background there.

In 2009, the Bellevue Police Officers Association/Fraternal Order of Police Lodge No. 59 (BPOA) filed a lawsuit against the City in the Sarpy County District Court. The BPOA sought a declaration that a provision of a collective bargaining agreement between the BPOA and the City regarding retirement benefits was valid and enforceable.

In the provision at issue, the City agreed to provide its police officers retirement benefits that exceeded those described in the Police Officers Retirement Act (Retirement Act). See Neb. Rev. Stat. § 16-1001 et seq. (Reissue 2012 & Cum. Supp. 2020). Then, as now, the Retirement Act required the establishment of a pension plan for police officers of cities of the first class such as the City. See § 16-1001. Both the officers and the City were required to make contributions to the pension plan described in the Retirement Act. See §§ 16-1005(1) and 16-1006. At the time it was enacted, the Retirement Act required officers to contribute 6 percent of their salary to a retirement account and the City to make a matching contribution. § 16-1005(1) (Reissue 1983). See 1983 Neb. Laws L.B. 237, § 5. Upon retirement, the officer would receive the accumulated value of that account. §§ 16-1002(5), 16-1007(1), and 16-1013(1) (Reissue 1983). See 1983 Neb. Laws L.B. 237, §§ 2, 7, and 13.

In the 2009 litigation, the City took the position that the portion of the collective bargaining agreement in which it agreed to provide officers retirement benefits exceeding those provided for in the Retirement Act was unenforceable. The City contended that the Retirement Act did not allow it to provide benefits other than those set forth in the Retirement Act.

The district court granted a motion for summary judgment filed by the BPOA. In its order, it found that the Retirement Act "simply sets forth the minimum benefits that a City of the First Class must provide to its police force. It does not prevent a city from offering additional benefits to officers."

The BPOA and the City then entered into a settlement agreement covering certain officers. Under the settlement

agreement, covered officers would contribute 6 percent of their salary to their retirement account and the City would make a matching contribution. To any covered officer who retired after reaching 55 years of age and providing at least 25 years of service, the City agreed to pay either (1) the total sum of the officer's retirement account or (2) a payment based upon a percentage of the officer's compensation in his or her last 5 years preceding retirement, whichever is greater. In this opinion, we will refer to the first type of benefit mentioned above as a "defined contribution payment" and the second as a "defined benefit payment."

In the case of every officer who has retired since the settlement agreement became effective, the value of the defined benefit payment has exceeded the value of the defined contribution payment. It has been the City's practice to provide the defined benefit payment to retiring officers by distributing the officer's retirement account to the officer and then making an additional payment equal to the difference between the value of the retirement account and the value of the defined benefit payment.

*Amendments to Retirement Act
and City's Response.*

After the parties entered into the settlement agreement, the Retirement Act was amended. The amendments increased the required contribution by both officers and cities from 6 percent to 6½ percent effective October 1, 2013, and to 7 percent effective October 1, 2015. See § 16-1005(1) (Reissue 2012).

In response to the amendments to the Retirement Act, the Bellevue City Council adopted amendments to the City's Police Retirement Plan and Trust (Retirement Plan). The amendments increased the contribution rates for both the officers and the City, so that they were the same as those set forth in the amendments to the Retirement Act. After the approval of the amendments to the Retirement Plan, the City increased deductions from officers' paychecks and its corresponding matching

payments as provided in the amendments to the Retirement Plan.

After the City amended the Retirement Plan, when officers covered by the settlement agreement retired, the City continued its practice of paying the defined benefit payment by distributing the officer's retirement account and then making an additional payment equal to the difference between the value of the retirement account and the defined benefit payment.

*Current Lawsuit.*

In 2017, the BPOA and a number of its officers filed a lawsuit against the City under 42 U.S.C. § 1983 (2012) and Nebraska's Uniform Declaratory Judgments Act, Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 2016). The lawsuit alleged that the City had violated the Contracts Clauses and Takings Clauses of the U.S. and Nebraska Constitutions by increasing the officers' contribution rates without providing any corresponding benefit. In their operative complaint, the BPOA and its officers sought an order enjoining the City from continuing to make deductions from the officers' salaries in excess of 6 percent; an order directing the City to disgorge funds it had previously deducted from the officers' salaries in excess of 6 percent, along with any investment income earned on those funds; and declarations that the City had violated the Contracts and Takings Clauses of the U.S. and Nebraska Constitutions. The operative complaint also asserted that the BPOA and its officers were entitled to be awarded all damages arising out of the City's actions and an award of costs and attorney fees pursuant to § 1988.

*District Court's Orders.*

The parties eventually filed cross-motions for summary judgment. After a hearing, the district court issued an order in April 2020 in which it found that the motion of the BPOA and the officers should be granted in part. In its order, the district court, relying on prior cases from this court, stated that public employee retirement plans are contracts protected from

impairment by the Contracts Clauses of the U.S. and Nebraska Constitutions. See, *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995); *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). The district court concluded that the officers' rights under the settlement agreement were impaired by the City's increased deductions from the officers' salaries. The district court reasoned that after the increase in the officers' contributions, the defined benefit payment the officers bargained for in the settlement agreement would have the same value, but would come at a higher cost to the officers.

Although the district court's April 2020 order determined that the BPOA and its officers were entitled to some relief, it withheld entry of judgment. Rather than entering specific relief, the district court requested that counsel for the parties provide suggestions as to the relief they believed was appropriate in light of the district court's findings.

In June 2020, after the parties submitted proposals as to appropriate relief, the district court issued another order. This order granted in part and denied in part the parties' respective motions for summary judgment. It found in favor of the BPOA and the officers based on their Contracts Clause claim and ordered certain language inserted into the Retirement Plan. Without expressly ruling on the Takings Clause claim or the request for attorney fees, the district court ordered all remaining claims denied and dismissed.

The BPOA and the officers filed a timely motion to alter or amend in response to the district court's June 2020 order. Relevant to this appeal, they contended that the language the district court ordered the City to insert into the Retirement Plan contained conflicting descriptions of the City's obligations in the event a current officer elected to receive the defined benefit payment upon retirement and also improperly reduced the amount a current officer would receive if he or she elected to receive the defined contribution payment. The BPOA and its officers also asked that the district court make "express

findings" regarding their "claims under 42 U.S.C. § 1983" and award them attorney fees and costs under § 1988.

In response to the motion to alter or amend, the district court issued an order in September 2020 that was substantially similar to its June 2020 order in nearly all relevant respects. The district court found that certain officers who had already retired were not entitled to relief. These officers have not appealed the district court's denial of relief, and so we do not discuss them further.

As for the officers who had not yet retired (current officers), the district court, echoing the conclusions expressed in its previous orders, found that the increased deductions from the officers' salaries impaired their rights under the Contracts Clauses. In the course of discussing the way in which the current officers were harmed by the increased contributions, the district court stated:

> [I]f the employee were to choose the defined benefit option, the employee is damaged by having paid the higher contributions required under the Retirement Act amendments. The employee's damages in that instance would be the sum of the higher employee contribution and the associated earnings on those contributions. The employee would be entitled to collect the applicable percentage of pay on retirement (the defined benefit). As contemplated by the agreement, the employee retirement account, less the damages as described in this paragraph, would belong to the City.

In a section of the order discussing the relief it would order, the district court stated that current officers who are eligible to receive the defined benefit payment upon retirement should also receive "his or her retirement contribution to the retirement account above 6 [percent] of his or her wages and any earnings associated with those contributions." To accomplish this result, the district court accepted the City's suggestion that it should order that certain language be inserted into the Retirement Plan. That language provided for the creation of separate accounts for (1) the current officers' 6-percent contributions—account

"EE012," (2) the City's 6-percent matching contributions—account "ER012," (3) the current officers' contributions in excess of 6 percent—account "EE912," and (4) the City's matching contribution in excess of 6 percent—account "ER912." That language also provided as follows:

> If a Plaintiff **vests** in the defined benefit and retires under the Contract, he or she will receive **the greater of**:
>
> 1. His or her defined benefit under the Contract; **or**
> 2. The amounts contained within their "EE012" account and the amounts contained in his or her "ER012". . . .
>
> Regardless of whether a Plaintiff elects the defined benefit (#1 above) or the amounts in his or her account (#2 above), he or she will receive 100% of the funds in the "EE912" Account.
>
> Where the defined benefit is greater and a Plaintiff retires under the Contract defined benefit, the City shall be liable for the difference between the defined benefit amount and the "EE012 . . . /ER012" accounts.
>
> CALCULATION FOR MAY 9, 2011
> DEFINED BENEFIT CALCULATION:
>
> [Defined Benefit Amount]
>
> – [EE012 + ER012]
>
> = City Liability
>
> In addition, the Plaintiff would also get to keep their "EE912" Account.
>
> City receives 100% of their "ER912"Account.

(Emphasis and brackets in original.)

The September 2020 order included a paragraph regarding the request for attorney fees made by the BPOA and its officers. It observed that no officer that was a party to the case had retired and been deprived of a right under the settlement agreement. The district court then stated, "Given the contingent nature of that future possibility of damage, it is difficult to come to the conclusion that the [BPOA and the current officers] are the prevailing party."

Finally, the district court ordered that "all remaining claims are denied and dismissed."

The BPOA and the current officers filed a timely notice of appeal and petition to bypass. We granted the petition to bypass.

## ASSIGNMENTS OF ERROR

The BPOA and the current officers assign 10 errors, but in our view, they can be fairly condensed and restated as follows: The district court erred by (1) ordering a remedy that will reduce the current officers' defined benefit payments, (2) ordering a remedy that could reduce the current officers' defined contribution payments below the minimum benefits required by the Retirement Act, (3) denying the request for attorney fees and costs on the grounds that the BPOA and the current officers were not "prevailing parties" under § 1988, (4) failing to find that the City violated § 1983, and (5) dismissing the BPOA and the current officers' Takings Clause claims.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Fuelberth v. Heartland Heating & Air Conditioning*, 307 Neb. 1002, 951 N.W.2d 758 (2020).

[2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## ANALYSIS

*Contracts Clause.*

Although the BPOA and the current officers assign several errors, the issues on appeal are relatively narrow when compared to those presented to the district court. Notably, the

district court's primary finding—that the City unconstitutionally impaired a contract—is not before us in this appeal. The BPOA and the current officers, unsurprisingly, do not assign error to that determination in their favor, and the City has not filed a cross-appeal challenging it either. While we therefore have no occasion to review the district court's specific conclusion on this point, we take this opportunity to observe that in some of our prior Contracts Clause cases, including those upon which the district court relied, we appear not to have considered a distinction, recognized by other courts, between an unconstitutional contractual impairment and a mere contractual breach.

Article I, § 10, of the U.S. Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Article I, § 16, of the Nebraska Constitution contains substantially similar language: "No . . . law impairing the obligation of contracts . . . shall be passed."

The district court relied on precedent from this court in determining whether a contractual "impairment" had occurred. It cited language from *Bauers v. City of Lincoln*, 255 Neb. 572, 583, 586 N.W.2d 452, 461 (1998), in which we, quoting an earlier opinion—*Caruso v. City of Omaha*, 222 Neb. 257, 383 N.W.2d 41 (1986)—stated that to be an impairment, a change "'must take something away and not work to the parties' benefit.'" (Emphasis omitted.) In *Caruso*, we reasoned that the word "impair," as it is used in the Contracts Clause of the U.S. Constitution, "requires no construction and may be given its ordinary meaning, which, according to the most basic dictionary definition, is 'to make worse.'" 222 Neb. at 260, 383 N.W.2d at 44, citing Webster's Third New International Dictionary, Unabridged 1131 (1981). We offered no additional explanation.

To the extent we concluded in *Caruso* that the word "impair" should be given a plain language definition taken from a modern dictionary and, thus, that any action that makes the complaining party's rights under a contract "worse" qualifies as

an impairment, that view appears to be an outlier. In several cases, federal courts of appeal have discussed the importance of distinguishing between governmental action that impairs a contract and governmental action that amounts to nothing more than a contractual breach. See, e.g., *Pure Wafer Inc. v. Prescott, City of*, 845 F.3d 943 (9th Cir. 2017); *TM Park Ave. Associates v. Pataki*, 214 F.3d 344 (2d Cir. 2000); *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248 (7th Cir. 1996); *Jackson Sawmill Co. v. United States*, 580 F.2d 302 (8th Cir. 1978). As these courts have explained, "the distinction is crucial, not least because conflating the two concepts would risk making a federal constitutional case out of even the most garden variety public contract dispute, transforming the Contract Clause into a font of state contract law." *Pure Wafer Inc.*, 845 F.3d at 951. See, also, *Horwitz-Matthews, Inc.*, 78 F.3d at 1250 ("[i]t would be absurd to turn every breach of contract by a state or munici-pality into a violation of the federal Constitution").

So, according to those courts that have considered the matter, what is the line between a government's breach of a contract and its impairment of a contractual obligation? The difference lies in whether the governmental entity has merely failed to perform a contract as promised or has gone further and enacted a law that prevents the other contracting party from pursuing ordinary contract remedies for such a failure. The former is a mere breach; the latter is an unconstitutional impairment. See, *Pure Wafer Inc.*, 845 F.3d at 951 ("state action cannot be said to 'impair' the obligation of a contract so long as it leaves both parties free to obtain a court-ordered remedy (typically damages) in the event that either of them fails to perform as promised"); *Crosby v. City of Gastonia*, 635 F.3d 634, 642 n.7 (2011) ("[i]f the offended party retains the right to recover damages for the breach, the Contracts Clause is not implicated; if, on the other hand, the repudiation goes so far as to extinguish the state's duty to pay damages, it may be said to have impaired the obligation of contract"); *TM Park Ave. Associates*, 214 F.3d at 349 ("[i]f a contract is merely

breached and the duty to pay damages remains, then the obligation of the contract remains and there has been no impairment"); *Horwitz-Matthews, Inc.*, 78 F.3d at 1251 ("[t]he essence . . . of a breach of contract is that it triggers a duty to pay damages for the reasonably foreseeable consequences of the breach. If the duty is unimpaired, the obligation of the contract cannot be said to have been impaired").

Although an argument could be made that our opinion in *Caruso v. City of Omaha*, 222 Neb. 257, 383 N.W.2d 41 (1986), adopted a definition of "impair" that did not account for the distinction between impairment and breach recognized by other courts, we need not determine today whether the *Caruso* definition should be reconsidered. As we have noted, the district court's conclusion that the City unconstitutionally impaired the contract has not been challenged on appeal. We thus proceed to consider the various assignments of error raised by the BPOA and the current officers.

*District Court's Remedy for*
*Defined Benefit Payments.*

The BPOA and the current officers first argue that while the district court correctly found that the City's actions had impaired its contractual obligations, the district court's remedy for that violation will actually result in a reduction of their defined benefit payments. The BPOA and the current officers claim that the district court's order shows that it intended to order a remedy that would result in officers entitled to the defined benefit payment receiving both the defined benefit payment amount and the return of their contributions in excess of 6 percent of their salaries, along with all associated earnings on those excess contributions. According to the BPOA and the current officers, however, the language of the district court's order will result in the current officers' receiving far less.

The City does not dispute that the district court intended to ensure that the current officers would receive both the defined benefit payment amount and the sum of their contributions

exceeding 6 percent and the associated earnings on those contributions. Neither does the City contend that such a remedy would be erroneous. The City argues instead that the district court's order, read in context, *does* direct that the current officers will receive both the defined benefit payment amount and the return of their excess contributions and associated earnings on those contributions. The sole dispute on appeal then boils down to whether the district court's order actually accomplishes what all agree was its correct intention.

The BPOA and the current officers contend that two different parts of the district court's final order are in conflict with its statement that upon retirement, the current officers should receive both the defined benefit payment and the sum of their contributions in excess of 6 percent and associated earnings on those contributions. First, they point to the district court's statement that "[a]s contemplated by the [settlement] agreement, the employee retirement account, less the damages as described in this paragraph, would belong to the City." Second, they direct us to the formula the district court ordered the City to insert into the Retirement Plan to calculate what a current officer who elects the defined benefit payment will receive upon retirement. The BPOA and the current officers observe that the formula directs that if the current officers elect the defined benefit payment upon retirement, the City is to be liable to pay them the difference between the defined benefit payment amount and the sum of the amounts in the EE012 and ER012 accounts and to provide them their EE912 account, which would contain their contributions in excess of 6 percent and associated earnings on those contributions.

We do not view the district court's statement that the employee retirement account "would belong to the City" as inconsistent with its stated intention that the current officers should receive their defined benefit payment and the return of their contributions in excess of 6 percent along with associated earnings on those contributions. In the context of the paragraph in which it appears, we understand that statement to

communicate merely that if the City pays an officer the defined benefit payment amount and returns his or her contributions in excess of 6 percent along with the associated earnings on those contributions, it is not also obligated to distribute to that officer the amounts that have accrued in his or her retirement account as a result of the 6-percent contributions.

The district court's defined benefit payment formula, however, strikes us as problematic. Under the formula, an officer eligible for the defined benefit would receive only the return of his or her contributions in excess of 6 percent, the earnings associated on those contributions, and the difference between the defined benefit payment and the amounts in his or her EE012 and ER012 accounts. Under the formula, the officer would not receive an amount equal to the defined benefit payment and the return of his or her contributions in excess of 6 percent and the earnings associated on those contributions.

The BPOA and the current officers suggest that while the formula the district court ordered the City to insert into the Retirement Plan will not function as intended, it can be easily fixed. They point out that if the formula was changed to make clear that in addition to receiving the difference between the defined benefit payment amount and the amounts in the EE012 account and ER012 account, an officer would also receive the amounts in the EE912, *EE012, and ER012* accounts, the officer would receive an amount equal to the defined benefit payment and the return of his or her excess contributions and any associated investment income.

At oral argument, the City conceded that the BPOA and the current officers' proposed modification of the formula would not result in any harm to the City. The City argued only that in light of the rest of the district court's order, the modification was unnecessary. We find it significant, however, that the district court ordered the City to insert the formula into the Retirement Plan. We see no reason not to dispel any future confusion as to the amount a current officer electing the defined benefit payment will receive by modifying the district court's

order so that the formula the City is ordered to insert into the Retirement Plan provides as follows:

[Defined Benefit Amount]

– [EE012 + ER012]

= City Liability

In addition, the Plaintiff would also get to keep their "EE012," "ER012," and "EE912" Accounts.

City receives 100% of their "ER912" Account.

*District Court's Remedy for Defined*
*Contribution Payments.*

The BPOA and the current officers next argue other language the district court ordered the City to insert into the Retirement Plan would result in an unlawful reduction of benefits in the event an officer elects to receive the defined contribution payment. The language at issue directs that if an officer vested in the defined benefit retires, he or she will receive the greater of the defined benefit or "[t]he amounts contained within their 'EE012' account and the amounts contained in his or her 'ER012' [account]." The BPOA and the current officers contend that by not also including the City's contributions in excess of 6 percent in the defined contribution payment amount, an officer who elects to receive the defined contribution payment will receive less than the Retirement Act guarantees.

The City counters that the language to which the BPOA and the current officers object is merely a correct application of the settlement agreement. It contends that if a current officer retires under the settlement agreement, he or she "ha[s] no right to the Retirement Act benefits." Brief for appellee at 19.

We find it unnecessary to determine whether the Retirement Act requires the City to include its contributions in excess of 6 percent in calculating the defined contribution payment amount. For other reasons we will explain, we find the district court's order should be modified to remove the language in question.

First, the amount the current officers would be entitled to receive if they elected the defined contribution payment was not at issue in this case. The operative complaint alleged only that the City's increased withholding from the officers' salaries was unconstitutional. The district court was not required to determine how an officer's defined contribution payment would be calculated in order to resolve those constitutional claims.

Not only was the calculation of the defined contribution payment not at issue in the case, it appears unlikely it will ever amount to anything more than a theoretical dispute between the parties. Recall that under the settlement agreement, an officer receives the defined contribution payment only if it exceeds the defined benefit payment. But as noted above, in the case of every officer who has retired since the settlement agreement became effective, the value of the defined benefit payment has exceeded the value of the defined contribution payment. Both parties also agree on appeal that it is unlikely the amounts in *any* current officer's retirement account will *ever* exceed the defined benefit payment. Finally, even if at some point in the future, the value of a current officer's retirement account approaches the defined benefit payment such that there is a live controversy between the parties as to how the defined contribution payment should be calculated, nothing would preclude either party from seeking a judicial determination of that issue at that time.

In essence, the district court entered a declaration as to how the defined contribution payment should be calculated despite no party requesting such a declaration and the agreement of both parties that it is unlikely that such a calculation will ever be necessary. This court has long held that declaratory and injunctive relief should not be issued to adjudicate hypothetical or speculative situations which may never come to pass. See, e.g., *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017). We find the district court erred by addressing the issue and therefore modify the district court's order by removing the following language:

If a Plaintiff **vests** in the defined benefit and retires under the Contract, he or she will receive **the greater of**:

1. His or her defined benefit under the Contract; **or**

2. The amounts contained within their "EE012" account and the amounts contained within his or her "ER012".

The vesting schedule shall be as outlined in the Contract.

(Emphasis in original.)

*Attorney Fees and Costs.*

The BPOA and the current officers next contend that the district court erred by denying their request for attorney fees and costs under § 1988 on the grounds that they were not, for purposes of that statute, "prevailing parties."

[3,4] Generally, a party may recover attorney fees and expenses in a civil action only if provided for by statute or if a recognized and accepted uniform course of procedure allows the recovery of attorney fees. *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015). Section 1988(b), however, provides that in "any action or proceeding to enforce a provision of [§] 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Section 1983 provides a civil remedy for deprivations of federally protected rights, statutory or constitutional, caused by persons acting under color of state law. *Schaeffer v. Frakes*, 306 Neb. 904, 947 N.W.2d 714 (2020). The BPOA and the current officers brought their claims based on the U.S. Constitution under § 1983.

[5,6] Although a trial court's decision awarding or denying attorney fees is generally reviewed for an abuse of discretion, see *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021), whether a plaintiff was a prevailing party is a legal question. See *Jenkins v. State of Mo.*, 127 F.3d 709 (8th Cir. 1997). An appellate court independently reviews questions of law decided by a lower court. *Stone Land & Livestock Co. v. HBE*, 309 Neb. 970, 962 N.W.2d 903 (2021). We will thus independently review the district court's determination that the BPOA and the current officers were

not prevailing parties. See, also, *id.* at 973, 962 N.W.2d at 907 ("'district court by definition abuses it discretion when it makes an error of law'"), quoting *Koon v. United States*, 518 U.S. 81, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).

The district court found that the BPOA and the current officers were not prevailing parties, because they had not yet retired and elected to receive the defined benefit payment. The district court reasoned that until an officer did these two things, he or she had not suffered any damage as a result of the City's actions. The district court concluded that the BPOA and the current officers could not be prevailing parties if they had not yet been damaged and there was only a possibility of future damage.

[7] The district court's focus on whether the BPOA and the current officers had suffered damages was misplaced. Guided by precedent from the U.S. Supreme Court, we have said that a plaintiff is a prevailing party under § 1988 if the plaintiff obtains actual relief on the merits of his or her claim that alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. See *Melanie M., supra*, citing *Lefemine v. Wideman*, 568 U.S. 1, 133 S. Ct. 9, 184 L. Ed. 2d 313 (2012). In the same case, again citing U.S. Supreme Court precedent, we recognized that an injunction or a declaratory judgment will usually satisfy the prevailing party test. See *Melanie M., supra*, citing *Lefemine, supra*. The prevailing party inquiry is thus not focused on whether the plaintiff has suffered damages or obtains a damages award, but whether the plaintiff has obtained relief from the court that alters the parties' legal relationship and requires the defendant to modify its behavior.

The BPOA and the current officers qualify as prevailing parties under the test we recited in *Melanie M.* The district court found that the City unconstitutionally impaired a contract. As a remedy, it ordered the City to insert language into the Retirement Plan. That language required the City to separate the officers' and the City's contributions into various accounts

and to return officers' contributions in excess of 6 percent, along with any associated investment earnings to those officers who retire and elect to receive the defined benefit. The addition of this language precludes the City from continuing to use officers' contributions in excess of 6 percent to fund its defined benefit payment obligations. Any current officer who retires and elects to receive the defined benefit payment will receive more from the City as a result of the district court's order. While the district court did not award damages to the BPOA and the current officers, its order required the City to modify its behavior and altered the legal relationship between the parties.

The City says little about the *Melanie M.* test and, instead, asserts that the district court was correct in finding that the BPOA and the current officers were not prevailing parties for a number of other reasons. As we will explain, we find no merit to these arguments.

The City first contends that the BPOA and the current officers do not qualify as prevailing parties, because the issue on which they prevailed was not significant and they were not awarded the relief sought in their operative complaint. In support of this argument, the City relies on language from *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In that case, the U.S. Supreme Court stated that one "typical formulation" of the prevailing party test was that plaintiffs could be considered a prevailing party if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*, 461 U.S. at 433 (internal quotation marks omitted).

The City's claim that the BPOA and the current officers did not succeed on a significant issue requires little discussion. The City offers nothing beyond a conclusory assertion that the BPOA and the current officers did not prevail on a significant issue, and in any event, we disagree that the district court's finding of an unconstitutional impairment of contract could be fairly characterized as insignificant.

The City fares no better with its argument that the BPOA and the current officers do not qualify as prevailing parties because the district court did not order the relief requested. Here, the City's argument is that because the remedy ordered by the district court was not the precise relief requested by the BPOA and the current officers in their operative complaint, they did not achieve the benefit sought in bringing suit under *Hensley, supra*. The City is correct that the operative complaint requested that the district court enter an order enjoining the City from deducting funds from the current officers' salaries in excess of 6 percent and requiring the City to immediately disgorge prior excess contributions. The City is also correct that the district court did not order that relief. The City is incorrect, however, that to be a prevailing party, a plaintiff must receive the precise relief requested.

The language from *Hensley* upon which the City relies does not require that plaintiffs obtain *the relief* they sought in bringing suit; it requires they achieve "*some of the benefit . . .* sought in bringing suit." 461 U.S. at 433 (internal quotation marks omitted) (emphasis supplied). Furthermore, the notion that a plaintiff must obtain the precise relief sought in order to be a prevailing party is at odds with the well-recognized principle that "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). Although the degree of a plaintiff's success bears on how much the plaintiff should be awarded as a reasonable fee, that question is separate from the threshold determination of whether the plaintiff is a prevailing party. See *id.*

Consistent with the language from *Hensley, supra*, and the prevailing party jurisprudence generally, other courts have recognized that a plaintiff qualifies as a prevailing party if it obtains actual relief in its favor even if the relief granted does not mirror the relief sought. See *St. John's Organic Farm v. Gem County Mosquito*, 574 F.3d 1054, 1059 (9th Cir. 2009) (explaining that "the relief achieved need not be of precisely

the same character as the relief sought in the complaint, but it must require defendants to do something they otherwise would not have been required to do"); *J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002) ("[t]he relief need not be the exact relief requested as long as it goes toward achieving the same goal"); *Fast v. School Dist. of City of Ladue*, 728 F.2d 1030, 1033 (8th Cir. 1984) (en banc) ("[i]n determining who is a 'prevailing party' for fee purposes, the important thing is what relief was awarded on the facts and the law, not what relief was expressly requested by the pleadings").

The City also argues that the district court's prevailing party decision was correct because the BPOA and the current officers were not successful on a § 1983 claim. The City appears to believe that when the district court dismissed all claims it had not specifically addressed, it dismissed the BPOA and the current officers' sole § 1983 claim as meritless. This is incorrect. There is no such thing as a stand-alone § 1983 claim. Section 1983 is a vehicle "for vindicating federal rights elsewhere conferred." *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 440 (4th Cir. 1999) (internal quotation marks omitted). See, also, *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979) ("one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything"). The BPOA and the current officers used § 1983 to allege that the City had violated the Contracts Clause and Takings Clause of the federal Constitution. By finding that the City unconstitutionally impaired a contract, the district court granted the BPOA and the current officers relief on a claim brought under § 1983. See *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995) (finding that plaintiffs prevailed on § 1983 claim alleging violation of federal Contracts Clause).

In the course of arguing that the BPOA and the current officers did not prevail on their § 1983 claim, the City also claims that the BPOA and the current officers failed to demonstrate

all that the U.S. Supreme Court has held a party must show in order to obtain relief against a municipality on a claim brought under § 1983. See, e.g., *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). This, however, is not an argument that the BPOA and the current officers *did not* prevail on a claim brought under § 1983, but, rather, an argument that they *should not* have prevailed on such a claim. If the City had filed a cross-appeal, we would have authority to take up the question of whether the district court erred by finding that the City unconstitutionally impaired a contract. See *Wasikowski v. Nebraska Quality Jobs Bd.*, 264 Neb. 403, 648 N.W.2d 756 (2002). Because the City did not file a cross-appeal, however, the only question before us is whether the BPOA and the current officers prevailed on their § 1983 claim in the district court. That question is answered by analyzing the relief the district court actually awarded, not by second-guessing whether that decision was correct. See, *Dahlem v. Board of Educ. of Denver Public Schools*, 901 F.2d 1508 (10th Cir. 1990); *Bishop v. Committee on Professional Ethics, Etc.*, 686 F.2d 1278 (8th Cir. 1982). Considering the relief the district court awarded, we find that the BPOA and the current officers were prevailing parties and that the district court made a legal error by finding otherwise.

Although we find that the BPOA and the current officers were prevailing parties in the district court, this alone does not mean that they were entitled to an award of attorney fees and costs. The determination of whether a plaintiff is a prevailing party is a threshold determination that the party is eligible for an award of fees under § 1988. See *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). And while the U.S. Supreme Court has held that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *id.*, 461 U.S. at 429 (internal quotation marks omitted), the decision of whether and to what extent to award attorney fees was committed in this instance to the discretion of the district court.

See § 1988. We therefore remand the cause to the district court for it to reconsider that question on the existing record and in light of our determination that the BPOA and the current officers qualified as prevailing parties.

*Remaining Assignments of Error.*

The remaining assignments of error asserted by the BPOA and the current officers require little analysis. They claim that the district court erred by dismissing their claims brought under § 1983 and their claims that the City violated the Takings Clauses of the U.S. and Nebraska Constitutions.

As we have explained above, the district court did not dismiss all of the § 1983 claims asserted by the BPOA and the current officers. It found merit to the claim brought under § 1983 that the City had unconstitutionally impaired a contract.

The district court did dismiss the Takings Clause claims asserted by the BPOA and the current officers, but at oral argument, their counsel acknowledged that if they obtained the relief they were seeking regarding the district court's remedy and its finding that they were not prevailing parties, it was not necessary for us to determine whether the district court erred by dismissing their Takings Clause claims. Accordingly, we will not examine that issue.

## CONCLUSION

Because we find that the district court erred as set forth herein, we affirm in part as modified, and in part reverse and remand for further proceedings.

Affirmed in part as modified, and in part reversed
and remanded for further proceedings.